UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SERVICE FIRST,**<br><br>Plaintiff,<br><br>vs.<br><br>**MATT LEE,**<br><br>Defendant. | **19-CV-12616-TGB**<br><br><br>**ORDER GRANTING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Service First Logistics ("SFL") filed a partial motion for summary judgment for its breach of contract claim. Defendant Matt Lee cross moved for a motion to dismiss the Complaint for failure to state a claim for relief. On May 11, 2022, this Court conducted oral argument, denying Defendant's motion to dismiss. For the reasons explained, Plaintiff's partial motion for summary judgment on its breach of contract claim only is granted, with damages and the other remaining counts to be determined at trial.

## I.    INTRODUCTION

SFL provides transportation logistics services to customers across the United States and maintains a place of business in Oakland County, Michigan. ECF No. 1-1, PageID.15. Defendant Lee worked for SFL from approximately March 2012 to January 2018. On March 20, 2017, Lee

1

entered into an Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement (the "Lee Contract") with SFL as a condition of his employment. Employment Agmt., ECF No. 1-1. In this restrictive covenant, Lee agreed not to start a competing company or solicit SFL's customers for a period of two years after his employment ended and not to disclose SFL's trade secrets. *Id.* at PageID.29. When signing the Lee Contract, Lee agreed that the geographic, duration, and content restrictions were reasonable and required for the adequate protection of SFL's business. *Id.* at PageID.30; Lee Dep., ECF No. 31-3, PageID.417 at 132:5–18.

In January of 2018, Lee separated from SFL. At the time of his departure in January 2018, Lee was a Senior Transportation Broker, responsible for developing new, and maintaining existing relationships with both customers and carriers. ECF No. 31-3, PageID.389. SFL alleges Lee's role required a substantial commitment of time and effort to build the relationships and these clients were obtained using SFL's database. However, Lee contends that many, if not most, of the customer's in his personal database were secured by him personally through "elementary techniques" such as cold calls, using the Produce Blue Book (a public database), independent of any assistance provided by SFL. *Id.* at PageID. 389-90.

Within a month of leaving SFL, Lee began working for A-One Pallet ("A-One"), a competitor of SFL, as a regional sales manager selling

2

pallets. A-One also conducts business activities with customers and carriers throughout Oakland County, Michigan. ECF No. 1-1, PageID.15. SFL alleges that while Lee was working at A-One Pallet, he violated the terms of the Lee Contract, including soliciting SFL's customers, competing against SFL, and using SFL's confidential business information and trade secrets for the benefit of A-One.

Although Lee began his career at A-One as a regional sales manager, his role quickly developed into providing freight and truck brokerage services as early as February 2018. Lee admits that in 2018 he started a competing business, Revolution Logistics, a subsidiary company to A-One that provides freight and truck brokerage services, the same line of business that SFL is in, in violation of the non-compete agreement. ECF No. 31-3, PageID.432. Lee is a 10% owner of Revolution Logistics, with the other 90% being the owners of A-One. *Id.* at 156:16–17; A-One Dep. Tr., ECF 31-4, PageID.550 at 28:22–29:6. As of September 2021, Lee was still a co-owner of Revolutionary Logistics. ECF No. Lee Dep. Tr., 31-3, PageID.437.

While Lee admits he violated the terms of the Agreement, he does not specify to what extent. ECF No. 31-3, PageID.420. For example, Lee admits that A-One/Revolution brokered its first freight transaction in November of 2018 with Huron Produce, an active client of SFL, in violation of the non-compete provision. Lee Dep. Tr., ECF No. 31-3, PageID.431. Lee also acknowledges that three of five customers of

3

Revolution Logistics were former SFL customers that he serviced the two years prior to his departure: Huron Produce, Lyons Transportation, and Kaiser Pickles. ECF No. 31-3, PageID.434; ECF No. 31-3, PageID.391; 27:17–28:4. SFL argues Lee's conduct is direct evidence that he violated both the non-compete *and* no-solicitation provisions of the Lee Contract. However, Lee contends that he is not liable for SFL's loss of these customers and that they sought out his brokerage services on their own.

With respect to Huron, Lee claims he has a personal relationship with Ed Ritzmann of Huron and merely informed him he was starting a freight brokerage business. He denies he ever made a "hard push" to solicit his brokerage services and that Ritzmann sought his services on his own accord because he was dissatisfied with SFL's performance. *Id*. at PageID.422; 424; 431.[1] Lee also concedes he discussed with former SFL customers, Kaiser and Lyons, his freight brokerage services in 2018, but contends these conversations did not constitute solicitation. *Id*. at PageID.430.

According to Lee, in early 2019, A-One began promoting itself as a freight brokerage company through its subsidiary, Revolutionary Logistics. *Id*. at PageID.422-23. SFL and A-One Pallet/Revolution

---

[1] The Lee contract defines "solicit" as "any efforts, in any form, intended to take business away from, intercept or interfere with the business of SFL, including doing business with any Customer or Motor Carrier." Ex. 2, at Ex. 1, at § (E)(iv).

Logistics both engage in the business of providing freight brokerage and truck brokerage services—making them competitors. *Id*. at PageID.385, 390 at 4:22–5:4; 25:17–26:13; ECF No. 31, PageID.353. Freight brokerage describes the service whereby a third-party company acts as the middleman connecting a carrier to a company shipping a product acting on behalf of the shipper. Lee Dep. Tr., ECF No. 31-3, PageID.390 at 24:17–25. Truck brokerage describes the service whereby a third-party company acts as a middleman connecting a carrier to a company shipping product acting on behalf of the carrier. *Id*. at PageID.390 at 25:3–11.

As of June 2021, Lee was the current employee of 48forty Solutions and Revolution Logistics. *Id*. at PageID.385 at 4:20-21. On September 6, 2019, SFL filed this lawsuit against Lee to enforce the terms of Lee's restrictive covenants. SFL seeks monetary damages, a permanent injunction, and attorneys' fees and costs. Specifically, SFL seeks damages and injunctive relief on the basis of five counts: Count I (breach of contract), Count II (misappropriation of trade secrets), Count III (tortious interference with contractual relations), Count IV (violation of Michigan Uniform Trade Secrets Act), and Count V (unfair competition). This Court granted Defendant A-One Pallet's motion to dismiss on July 30, 2020, for lack of personal jurisdiction in Michigan. ECF No. 13. Only Counts I, II, IV, and V are against Defendant Lee. SFL has filed a partial motion for summary judgment on its Count I, breach of contract claim. The motion will be GRANTED as to liability.  The jury will need to decide

damages as to Count I, and will also need to consider Counts II, IV and V.

## II.   LEGAL STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v.*

*J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

## III.   DISCUSSION

In order to prove breach of contract, a plaintiff must establish: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from that breach. *Stoken v. JET Electronics & Technology, Inc.*, 174 Mich. App. 457, 463 (1988). Further, Michigan law is well-established that "a court must construe and apply unambiguous contract provisions as written." *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 461 (2005). Additionally, "[a] contract must be interpreted according to its plain and ordinary meaning." *Holmes v. Holmes,* 281 Mich. App 575, 593 (2008).

SFL alleges Lee violated both the non-compete and the non-solicitation provision of the Lee Contract and that both provisions are narrowly tailored to prevent Lee from soliciting SFL's customers with whom he worked in the prior two years, for two years after his employment with SFL. *See* generally, *Rooyakker & Sitz, PLLC v. Plante & Moran, PLLC*, 276 Mich. App. 146 (Mich. Ct. App. 2007) (finding

restrictive covenant prohibiting employees from soliciting or providing similar services to employers' clients for a two-year period enforceable where confidentiality of patient information was integral to maintaining accounting business). However, Lee argues that the non-compete clause of the Lee Contract "constitutes an illegal restraint of trade and should not be enforced." ECF No. 38, PageID.758.

For the reasons explained below, the Court finds that narrowly construed, the non-compete provision of the Lee Contract is enforceable and that the evidence discloses no issue of fact as to Defendant Lee's having breached the terms of the Lee Contract.

### A. The Lee Contract's Non-Compete Clause is Enforceable

Non-compete clauses "are only enforceable to the extent they are reasonable." *Coates v. Bastian Brothers, Inc.*, 741 N.W.2d 539, 545 (Mich. App. 2007); *Gene Codes Corp. v. Thomson*, No. 09-14687, 2011 WL 611957, at *10 (E.D. Mich. Feb. 11, 2011). Michigan statute § 445.774a(1) sets forth the criteria for assessing the reasonableness of a covenant not to compete:

> An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it

reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

As is evident from the language of this statute, the enforceability of a covenant not to compete hinges on the reasonableness of its duration, its geographic scope, and the extent of its reach to particular types of employment or lines of business. *See St. Clair Medical, P.C. v. Borgiel*, 270 Mich. App. 260, 266 (2006). Moreover, a restrictive covenant must be "reasonable in relation to an employer's competitive business interest," meaning that it "must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill." *Id.*

If the reasonableness of a non-compete clause is challenged, the party that seeks to enforce the provision bears the burden of demonstrating its reasonableness and validity. *Coates*, 741 N.W.2d at 545. Defendant argues that the non-compete clause at issue here fails in various respects to satisfy this standard of reasonableness, however, his primary and most compelling argument for voidance of the non-compete provision is the fact that the provision was deemed unenforceable by Michigan state circuit court.

In *Service First Logistics, Inc. v Jacob Blust et al*. Case #19-174259-CB2 (April 20, 2020), Judge Andrews was faced with nearly identical non-compete language on Defendant's motion for summary judgment. After reviewing the restrictive covenant, Judge Andrews found that the non-

compete clause was unenforceable as a matter of law because it was an illegal restraint on trade. The court reasoned that the non-compete clause completely prohibited Defendant from:

> working in, not only, third-party logistics companies, but also any transportation-intermediary or supply-chain management services. Under these circumstances, Defendant would not be able to work for any third-party logistics company in the United States or Canada despite having no connection with Plaintiff. The non-competition clause is not narrowly focused to prevent unfair competition; rather, it is designed to be a prohibition on all competition and is an unlawful restrain[t] on trade.

In addition, the court found:

> that the non-competition clause is unenforceable as it is unreasonable in geographic area and line of business restrictions. Under Michigan law, "geographic limitations in non-competition agreements must be tailored so that the scope of the agreement is no greater than is reasonably necessary to protect the employer's legitimate business interests." *Whirlpool Corp v Burns,* 457 F.Supp.2d 806, 813 (W.D. Mich. 2006).

Although the court's ruling is nonbinding, the Court does find the circuit court's analysis of the non-compete provision persuasive. Nevertheless, where appropriate, even when a restrictive covenant is found to be too broad to be enforceable, the Court is authorized under Michigan law to "limit [Defendant's non-compete] agreement to render it reasonable in light of the circumstances," and to "specifically enforce the agreement as limited." Mich. Comp. Laws § 445.774a(1).  Moreover, the reasonableness of a covenant not to compete is not analyzed in the

abstract, but in the context of the employer's particular business interest and the function and knowledge of the particular employee. *See Kelsey-Hayes Co. v. Maleki*, 765 F. Supp. 402, 406 (E.D. Mich. 1991) (noting that "[i]t is not reasonable to place as stringent a tie on an entry level computer programmer as might be placed upon a system designer," and finding that employer's asserted interest in precluding employment did "not extend to one performing [defendant's] function, at his level of comprehension."). Unlike here, where Lee played an integral role in the Company as a senior transportation broker, the defendant employee in *Service First Logistics vs. Blust* was an entry level intern. The Court finds the present facts distinguishable, and thus it is appropriate to construe the covenant so that it is reasonable, and enforceable, in the interest of justice.

### 1. Duration

While "Michigan courts have not provided any bright line rules," *Certified Restoration v. Tenke*, 511 F.3d 535 at 547 (6th Cir. 2007), "they have upheld non-compete agreements covering time periods of six months to three years," though agreements at the shorter end of that range appear to be more common and more uniformly upheld. *See Whirlpool Corp. v. Burns*, 457 F. Supp. 2d 806, 813 (W.D. Mich. 2006); *Rooyakker & Sitz v. Plante & Moran*, 276 Mich. App. 146 (2007). Therefore, the two-year restriction in this case is reasonable.

## 2. Geographical Scope

Michigan law next calls for consideration of whether a covenant not to compete is reasonable in its geographical scope. Geographic limitations in non-competition agreements must be tailored so that the scope of the agreement is no greater than is reasonably necessary to protect the employer's legitimate business interests. *Superior Consulting Co.,* 851 F.Supp. at 847; *New World Sys. Corp. v. Jones,* No. 06-11603, 2009 WL 996954, at *11 (E.D. Mich. Apr. 14, 2009).

Where, as here, a non-compete clause does not "specify any geographic limitations," but instead prohibits a departing employee from accepting a position with an identified group of competitors or customers no matter where they may be located, the clause may negate some of SFL's arguments in the enforceability of the noncompete, "[b]ut this fact alone is not sufficient for the court to reject the clause. *Men v. Cutlip*, No. 1:12-CV-34, 2012 WL 12875776, at *4 (W.D. Mich. Sept. 20, 2012). Courts in our jurisdiction have recognized that such a clause "can be reasonable if the employer actually has legitimate business interests throughout the world." *Superior Consulting*, 851 F. Supp. at 847 (upholding a covenant not to compete that "did not specify any geographic limitations," where the plaintiff employer did "business in forty-three states and a number of foreign nations"); *see also ACS Consultant Co. v. Williams*, No. 06-11301, 2006 WL 897559, at *7 (E.D. Mich. April 6, 2006); *Lowry Computer Products, Inc. v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997)

12

(holding that a non-compete agreement with an "unlimited geographical scope" was reasonable, where the plaintiff employer "service[d] accounts in 48 states and in various foreign countries"); *Icomtab.com, LLC v. Carrillo Carranza*, No. 18-13000, 2020 WL 3440577, at *10 (E.D. Mich. Feb. 24, 2020 (same).

In view of the facts of this case, the Court finds there is an appropriate fit between the national geographic scope of SFL's business interests and the reach of Lee's non-compete agreement. SFL serves customers nationwide and their goods are shipped all across the country. Neubauer Dec., ECF No. 31-2, PageID.378; Lee Dep., ECF No. 31-3, PageID.406. Therefore, the geographic restriction may be deemed reasonable. However, even if it were the case that the restriction as expressed is too broad, the Court is authorized under Michigan law to "limit [Defendant's non-compete] agreement to render it reasonable in light of the circumstances," and to "specifically enforce the agreement as limited." Mich. Comp. Laws § 445.774a(1). For example, the Court could limit the geographic scope to the State of Michigan or within a 50-mile radius of SFL's business. If so limited, the clause in the agreement would still have prohibited Defendant from accepting a position with A-One Pallet, given that A-One conducts business activities with carriers and customers throughout Oakland County, Michigan, where SFL maintains a place of business. ECF No. 1-1, PageID.15. Consequently, Defendant cannot appeal to any purported unreasonableness in the geographical scope of

his non-compete agreement as a basis for avoiding the enforcement of this agreement.

### 3. Type of Employment or Line of Business

The Court next must inquire whether Defendant's non-compete agreement is reasonable as to the "type of employment or line of business" encompassed by this agreement. Michigan courts have opined that "[a] limitation on working in any capacity for a competitor of a former employer is too broad to be enforceable." *Superior Consulting*, 851 F. Supp. at 847; *see also Integrated Management Systems*, 2019 WL 3867061, at *5. Notably, the non-compete clause in the Lee Contract does not specify the types of employment Lee may or may not accept, but instead broadly prohibits him from taking any position whatsoever with any of SFL's competitors, which weighs in favor of finding the Lee Contract unreasonably broad absent a type-of-employment restriction. However, there remains a competing interest of enforcing a legitimate business interest to prevent the "anticompetitive use of confidential information." *Rooyakker,* 276 Mich. App. 146, 2007 WL 1429691, at *6 (quoting *Whirlpool,* 457 F.Supp.2d at 812). *See also Follmer, Rudzewicz & Co., P.C. v. Kosco,* 420 Mich. 394, 362 N.W.2d 676, 680–81 (1984) ("While an employee is entitled to unrestricted use of general information acquired during the course of his employment or information generally known in the trade or readily ascertainable, confidential information, including information regarding customers, constitutes property of the

14

employer and may be protected by contract."). Additionally, SFL has a "reasonable business interest in protecting its good will and, specifically, in restricting its former employees from enticing away the employer's old customers." *Frontier Corp. v. Telco Commc'ns Group, Inc.,* 965 F. Supp. 1200, 1208 (1997) (applying Michigan law) (internal quotations and citation omitted). Indeed, an employee "who establishes [client] contacts and relationships as the result of the goodwill of his employer's [business] is in a position to unfairly appropriate that goodwill and thus unfairly compete with a former employer upon departure." *St. Clair Med.,* 715 N.W.2d at 920.

In challenging SFL's need to protect its business interests, Lee argues that working at SFL does not require an advanced degree or specialized training. Rather SFL employs a "bull pen" of workers to call shippers to look for loads and to look for trucks to carry the produce to specified locations. He claims he was merely one of many bull pen employees. ECF No. 38, PageID.756. The Court finds this unpersuasive.

At the time of his departure, Lee's title was senior transportation broker. Given that Lee was one of SFL's first employees and received six years of training and clientele information within the Company, the Court finds that no reasonable jury could find that Lee was merely a "bull pen" employee. He was integral to the SFL and had built and maintained relationships with key clients of the Company, as evidenced by his ability to continue those relationships after his departure. Moreover, Lee did not

just join a competing company. He created a competing business and used former and active SFL customers to do so within the same county that SFL conducted business. As a business owner and founding member of a freight brokerage business, Lee violated the kind of protectible business interests non-compete laws were created to protect.

Accordingly, the Court finds it appropriate to limit the non-compete provision so as to "render it reasonable in light of the circumstances in which it was made," and then "specifically enforce the agreement as limited." Mich. Comp. Laws § 445.774a(1). Here, the appropriate limitation would be to restrict Lee from obtaining employment in the field of managing and conducting a transportation and freight brokerage service business.

### B. Lee Breached the Non-Compete Clause

Given that the Court has decided that the contract is enforceable, the prevailing question is whether there is a genuine issue of material fact as to whether Lee breached the contract. Lee concedes that he provided brokerage services to three former and/or active SFL customers within the restricted two-year period when he joined A-One as regional sales manager. Lee admits he began providing freight brokerage services to Huron Produce, an active customer of SFL, in November 2018, less than a year after leaving SFL.

The Court finds that no reasonable jury could find that Lee's conduct did not breach the non-compete provision of the Lee Contract.

16

The only remaining question is whether Lee is responsible for soliciting these clients as well.

### C. Whether Lee Breached the Non-Solicitation Clause is a Genuine Issue of Material Fact

Lee contends, and the Court agrees, that a question of fact exists as to whether Lee actually solicited three of SFL's former customers or whether the customers independently requested service based on their personal relationship with Lee.

Although Lee admits he violated the agreement, he does not explain to what extent, and he denies the actual solicitation of SFL clients. Lee testifies that after he left Service First, he maintained a personal relationship with Ed Ritzmann of Huron Produce. At some unknown time prior to November 2018, the two were discussing football and the conversation drifted to the fact that A-One had obtained authority to conduct brokerage services. Lee does not consider this conversation to be solicitation for business. ECF No. 31-3, PageID.431. Rather, Lee claims Revolutionary Logistics did not begin servicing Ritzmann until Ritzmann reached out for assistance during the holidays to "cover freight" because his "current service providers [were] failing [him]." *Id.* at PageID.434.

In response, SFL points to an email where Lee asks Huron employees to keep their new clientele relationship private, as evidence that Lee solicited Huron in violation of the Lee Contract. ECF No. 31-3, PageID.506. While it may be probative of a desire to hide something, an

email requesting a customer to keep a relationship in confidence is not in itself dispositive of wrongdoing.

With respect to Kaiser and Lyons, both SFL customers within the last 2 years before Lee's departure, Lee similarly contends that although he discussed providing services after leaving SFL, he did not initiate providing brokerage services to clients. Lee also contends that he did not actually provide brokerage services to Lyons, only drivers and trucks for local deliveries.

The Court finds that a jury will need to sort out the facts of the solicitation allegation after hearing testimony from employees at Huron, Kaiser, and Lyons. As it stands now, the record contains a genuine dispute as to whether Lee violated the non-solicitation provision of the Lee Contract. Nevertheless, Lee's breach of the non-compete provision is enough for SFL to prevail on its breach of contract claim.

### D. Remedies

SFL seeks a preliminary and permanent injunction, monetary damages, and an award of interest, costs, and attorney fees as expressed in the Lee Contract. ECF No. 1-1, PageID.24. The Court will address each in turn.

### 1. Monetary Damages

Money damages are recoverable for breach of a non-compete agreement. *Perceptron, Inc. v. Sensor Adaptive Machs., Inc.*, 221 F.3d 913, 923 (6th Cir. 2000) (applying Michigan law); *Best Team Ever, Inc.*, 2015 WL 3874477, at \*8. The Lee Contract provides for money damages (ECF No. 32-2, PageID.726, at § D.g) and SFL requests relief in the form of disgorgement of Lee's ill-gotten gains as the appropriate measure of damages.

A plaintiff seeking unjust enrichment damages or disgorgement of a defendant's profit bears the relatively low initial burden of "producing evidence permitting at least a reasonable approximation of the amount of the wrongful gain." Restatement § 51(d). The "[r]esidual risk of uncertainty in calculating net profit is assigned to the defendant." *Id*. In other words, once the plaintiff has put forward a reasonable estimate of the profits that the defendant has unfairly earned as a result of its unlawful conduct, the burden shifts to the defendant "to demonstrate the costs that should be deducted in calculating net profit." *Id*; Restatement (Third) of Restitution and Unjust Enrichment, § 51, Cmt. E (2011) ("[t]he profit for which the wrongdoer is liable . . . is the net increase in the assets of the wrongdoer, to the extent that this increase is attributable to the underlying wrong.")

"Profit includes any form of use value, proceeds, or consequential gains (§ 53) that is identifiable and measurable and not unduly remote."

§ 51(5)(a). "As a general rule, the defendant is entitled to a deduction for all marginal costs incurred in producing the revenues that are subject to disgorgement. Denial of an otherwise appropriate deduction, by making the defendant liable in excess of net gains, results in a punitive sanction that the law of restitution normally attempts to avoid." (*Id.*, com. h.)

"Even if all relevant facts can be ascertained," (which in this case they cannot at the summary judgment stage) "the problem of attribution may involve questions that facts cannot answer." § 51, Cmt. E. Such questions include:

> (1) How far to follow a chain of causation before deciding that a particular element of profit is too remote from the underlying wrong to be subject to restitution.

> (2) What proportion of the defendant's overall profits to treat as the product of the underlying wrong; conversely, what proportion of the profits would have been realized had the wrong not been committed.

> (3) What credit to allow on account of the defendant's contributions of property or services in calculating the net profit for which the defendant is liable.

*Id.*

According to SFL, Lee and his company obtained a net profit of $327,465.38 through June 12, 2021, by servicing the three former SFL customers: Lyons, Kaiser, and Huron Produce. ECF No. 31-5; SFL IROG Response 5; ECF No. 31-3, PageID.511. SFL alleges that this is the profit that would have been the business of SFL, if not for Lee's conduct. SFL

contends it is Lee's burden to establish any deductions and SFL accepted Lee's deductions established in discovery.

In response, Lee raises several challenges to the proposed damages based upon SFL's calculations. First, Lee points to the difficulty in identifying what figure constitutes the overall profits flowing from the underlying wrong.  Although SFL refers to the requested amount as net profits, Lee considers it to be A-One's gross revenue. *See* ECF No. 38, PageID.765. This is a critical point of disagreement that must be clarified to correctly assess reasonable damages. At his deposition, Royce Neubauer, sole owner of SFL, explains that while profits for a brokerage company are determined by taking the difference between what the shipper pays and the amount the carrier is paid, the actual net profit, includes additional administrative, legal, and operative costs and fees that must be subtracted. Neubauer Dep., ECF No. 31-6, PageID.635-36. Lee also states that the amount paid by each client does not include costs such as, broker commissions, broker assistant salary, rent, office supplies, and insurance. Lee Answers to IROG, ECF No. 38-4, PageID.797. Second, at oral argument held on May 11, 2022, Lee's counsel argued that while A-One may have received a profit of $327,465.38, that does not reflect the amount Lee actually received as an employee. Lastly, Lee argues that SFL has not presented evidence indicating that, absent violation of the non-compete or non-solicitation provision, the three customers would have sought and paid for similar

21

services with SFL. Accordingly, there is a question of fact as to what damages, if any, SFL actually suffered. Plaintiff also only seeks partial summary judgment, leaving three remaining counts to the determination of the jury: Count II (Misappropriation of Trade Secrets), Count IV (violation of Michigan Uniform Trade Secrets Act), and Count V (Unfair Competition). Trial of these claims will likely reveal additional information that may affect the calculation of compensable harm. Accordingly, damages should be left for the trier of fact to decide.

### 2. Permanent Injunction

In addition to monetary damages, SFL requests the Court enter a permanent injunction barring Lee from working for any freight brokerage service or soliciting any SFL customer with which he worked from 2016-2018 for a period of two years after entry of judgment.

Although it has been more than four years since Lee departed SFL in January of 2018, courts can choose to extend the period of a non-compete to begin upon entry of the injunction where the breaching party violated the terms of a non-compete agreement. *Thermatool Corp. v. Borzym*, 227 Mich. App. 366, 375 (1998); *D.M. Rottermond Inc. v. Shiklanian*, No. 21-CV-10393, 2021 WL 1087422, at *2 (E.D. Mich. Mar. 22, 2021). In this case, the Court finds it inappropriate to impose such a restriction in this matter for the reasons explained herein.

To impose a permanent injunction, SFL must demonstrate success on the merits, irreparable harm, balance of the harms to the parties in

its favor, and public interest. *Uniroyal Goodrich Tire Co. v. Hudson*, 873 F. Supp. 1037, 1041 (E.D. Mich. 1994); *Cert. Restoration Dry Cleaning Network, LLC v. Tenke*, No. 07-10341, 2008 WL 2218427, at *7–8 (E.D. Mich. May 27, 2008).

Here, the first prong is satisfied. The Court has determined Lee breached his contract, so SFL has demonstrated success on the merits with respect to its breach of contract claim.

However, the Court is not convinced that Plaintiff has established the second prong of irreparable harm. "To be granted an injunction, the plaintiff must demonstrate, by clear and convincing evidence, actual irreparable harm or the existence of an actual threat of such injury." *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 609 (E.D. Mich. 2015) (quoting *Patio Enclosures, Inc. v. Herbst,* 39 Fed. Appx. 964, 969 (6th Cir.2002) (internal quotations omitted)). "A finding of irreparable harm is the single most important prerequisite that the Court must examine when ruling upon a motion for a preliminary injunction." *Id.* (citations and internal quotations omitted); *see also Mount Clemens Inv. Grp., L.L.C. v. Borman's Inc.*, 2010 WL 3998095, at *3 (E.D. Mich. Oct. 12, 2012) (reasoning that district court need not evaluate other factors where failure to demonstrate irreparable harm is fatal to plaintiff's motion).

The Sixth Circuit has held that the loss of customer goodwill and competitive position may constitute irreparable harm. *FirstEnergy Solutions Corp. v. Flerick,* 521 Fed. Appx. 521, 529 (6th Cir. 2013). Here,

plaintiff established at a bare minimum, that Lee worked for and started a competitor company. There is also a genuine issue of material fact as to whether Lee solicited SFL customers in violation of the restrictive covenant. However, loss of customer goodwill or competitive position alone may not suffice. "[W]hether or not the loss of customer goodwill amounts to irreparable harm often depends on the significance of the loss to the plaintiff's overall economic well-being." *Apex Tool Grp.*, 119 F. Supp. 3d at 609 (quoting *Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.*, No. 13-CV-15189, 2014 WL 562264, at *10 (E.D. Mich. Feb. 13, 2014)). SFL points to three customers (Huron Produce, Lyons Transportation, and Kaiser Pickles) that it allegedly lost due to Lee's violation of the contract. Other than the alleged loss of profits estimated at $327,465.38 from those three customers, SFL has not pled that Lee's conduct has resulted in the detriment of its overall economic well-being. The Court is unconvinced that the alleged loss of customer goodwill nor the creation of Revolution Logistics has irreparably harmed Plaintiff such that it has suffered "severe reputational harm, bankruptcy, or 'complete destruction' of the business is at risk." *See id.* (internal citations omitted). "It appears to the court that [plaintiff] is a substantial company and would not be driven out of business in the absence of injunctive protection." *Id.*

Moreover, although Lee's actions harmed SFL's customer goodwill and competitive position in the past, SFL has not alleged that Lee has

continued to solicit any additional SFL customers in violation of the Lee Contract or that such harm is likely to occur in the future.  Accordingly, there is no immediate threat of irreparable harm.

Finally, it is well settled that a SFL does not suffer irreparable injury if the injury is fully compensable by money damages. *Overstreet v. Lexington–Fayette Urban Cnty. Gov.,* 305 F.3d 566, 578 (6th Cir.2002) (citation omitted).  In the Lee Contract, SFL states that in addition to seeking an injunction,  it has the sole discretion to "pursue a claim for damages . .  resulting from any breach." ECF No. 32-2, PageID.726; § (D) g. Because the Court finds that damages would be an adequate remedy in this case, entering an injunction on top of damages  would be merely punitive, and contrary to the interests of justice. This factor therefore weighs against granting an injunction.

The next factor the court considers is whether issuance of an injunction would cause substantial harm to others. At this point, SFL does not appear to face any additional harm, while there is the possibility for substantial harm to Lee if the injunction were enforced. An injunction would adversely affect  Revolutionary Logistics, and could impact the jobs of employees as well. Given that the Court finds monetary damages an appropriate remedy, for the same reasons, the Court finds an injunction unwarranted.

Lastly, Plaintiff argues that "[t]he public interest is served in the enforcement of contractual provisions." ECF No. 31, PageID.372. "[T]he

enforcement of voluntarily assumed contract obligations" is a strong public interest, as is the need to prevent unfair competition. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 550 (6th Cir. 2007). Lee is obligated to refrain from soliciting any of Plaintiff's employees, which weighs in favor of granting a preliminary injunction. Yet, this factor must be weighed against the others.

In sum, the Court finds that the "extraordinary and drastic remedy" of a preliminary injunction is not warranted in this case. *See S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (quoting *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)). Even with a likelihood of success on the merits, thus also implicating the public interest of enforcing contracts, SFL's showing of irreparable harm is simply insufficient. This factor is characterized as an "indispensable requirement" for an injunction, and Plaintiff has failed to establish it. *Superior Scape, Inc. v. JCB Design & Build, LLC,* No. 21-12889, 2022 WL 19189, at *7 (E.D. Mich. Jan. 3, 2022) (quoting *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020)). The Court is not persuaded that a permanent injunction at this belated stage would serve its purpose of protecting SFL or the public from irreparable harm.

### 3. Attorney Fees and Costs

The Lee Contract provides that SFL is entitled to its attorneys' fees in successfully prosecuting a breach of the Lee Contract. ECF No. 32-2,

PageID.726 at § (D) h. As the prevailing party on SFL's breach of contract claim, SFL is entitled to an award of attorneys' fees to be determined upon the resolution of the case.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is **GRANTED**, with respect to Count I (breach of contract). The remaining counts in the Complaint, Count II (Misappropriation of Trade Secrets), Count IV (violation of Michigan Uniform Trade Secrets Act), and Count V (Unfair Competition), as well as the amount of damages and attorneys' fees will be determined at trial.

**IT IS SO ORDERED.**

Dated: August 17, 2022      s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE

27